IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COREY FRATUS,
on behalf of Plaintiff and
the class members described below,

        Plaintiff,

vs.

OPPORTUNITY FINANCIAL, LLC,
TODD G. SCHWARTZ and
PAMELA D. JOHNSON,

        Defendants.

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.    Plaintiff Corey Fratus brings this action against Opportunity Financial, LLC, and its two managers and executives, Todd G. Schwartz and Pamela D. Johnson, to obtain redress from usurious loans arranged by Opportunity Financial, LLC.

2.    Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count II – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count III).

### JURISDICTION AND VENUE

3.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367.

4.    This Court has personal jurisdiction over each Defendant because they:

    a.    Are located in Illinois.

    b.    Knowingly participated in the making and collection of unlawful loans to

Illinois residents. In similar actions, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

        c.      Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group*, *LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

        d.      Purposefully directed the lending operation at Illinois consumers and with the intent of availing themselves of the privileges of doing business in Illinois.

        5.      Venue is proper because acts to obtain and collect the loans impacted Plaintiff in the Northern District of Illinois and because Defendants are located here.

        6.      Article III of the Constitution of the United States is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

7. Plaintiff is a citizen of Illinois and a resident of Wheaton, Illinois.

8. Defendant Opportunity Financial, LLC is a Delaware limited liability company with its principal place of business at 130 E. Randolph, Ste. 3400, Chicago, IL 60601. Its registered agent and office is Cogency Global Inc., 600 South Second St., Suite 404, Springfield, IL 62704-2542.

9. Defendant Opportunity Financial, LLC has two managers, Defendants Todd G. Schwartz and Pamela D. Johnson, both of whom may be found at at 130 E. Randolph, Ste. 3400, Chicago, IL 60601.

10. Defendant Todd G. Schwartz is the Chief Executive Officer of Defendant Opportunity Financial, LLC and functions as such.

11. Defendant Pamela D. Johnson is the Chief Financial Officer of Defendant Opportunity Financial, LLC and functions as such.

12. Defendants Todd G. Schwartz and Pamela D. Johnson formulated the lending practices at issue herein, obtained capital for the loans, and direct the making and collection of the loans.

13. According to the annual report on SEC Form 10-K filed by OppFi, Inc., the public parent of Opportunity Financial, LLC, for the year ending Dec. 31, 2022 (original page 32), "Our success significantly depends on the continued service of our senior management team, including Todd Schwartz, our Chief Executive Officer, Pamela Johnson, our Chief Financial Officer, and other highly skilled personnel."

## FACTS

14. On or about March 4, 2024, Plaintiff obtained a $4,000 loan from Defendant Opportunity Financial, LLC, via the Internet. A copy of the loan agreement is attached as <u>Exhibit A</u>. Plaintiff obtained the loan because he was behind on household bills after experiencing medical issues that resulted in unexpected medical expenses.

-3-

15. The loan had an interest rate of 159.56%.

16. This rate is typical of the rates charged by Opportunity Financial, LLC to residents of Illinois.

17. All charged by Opportunity Financial, LLC to residents of Illinois exceed 72% per annum.

18. The loan was nominally made by Capital Community Bank.

19. The loan was the second such loan Plaintiff obtained from Opportunity Financial, LLC.

20. Plaintiff disclosed his Illinois address on the loan applications for both loans.

21. The prior loan had similar rates.

22. After Plaintiff paid off the first loan, Opportunity Financial, LLC solicited Plaintiff to apply for new loans. It also sent Plaintiff emails regarding promotions whereby he could obtain a $50 gift card if he referred his friends or family members to obtain loans from Opportunity Financial, LLC.

23. Plaintiff has paid usurious interest. The March 4, 2024 loan is still outstanding unpaid as of the filing of this action.

24. After Plaintiff was a few days late on a recent payment, Defendants sent Plaintiff an email attempting to get him to make the past due payment.

25. After discovering the loan was illegal under Illinois law, Plaintiff called Opportunity Financial, LLC to ask that the interest rate be reduced to a lawful rate. Plaintiff was eventually put in touch with a manger who told him that Utah law applied to the loan, and refused to change the rate.

## ILLINOIS PREDATORY LOAN PREVENTION ACT

26. By making or arranging the loans, Opportunity Financial, LLC violated the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq. ("PLPA").

27. Opportunity Financial, LLC is a "lender" as defined in 815 ILCS 123/15-1-10,

-4-

which defines "lender" to include "any person or entity, including any affiliate or subsidiary of a lender, that offers or makes a loan, buys a whole or partial interest in a loan, arranges a loan for a third party, or acts as an agent for a third party in making a loan, regardless of whether approval, acceptance, or ratification by the third party is necessary to create a legal obligation for the third party . . . ."

28. Under 815 ILCS 123/15-1-15(a), the PLPA "applies to any person or entity that offers or makes a loan to a consumer in Illinois."

29. The PLPA specifically covers loans made to Illinois residents over the Internet. 815 ILCS 123/15-1-10 defines "loan" to include "closed-end and open-end credit, retail installment sales contracts, motor vehicle retail installment sales contracts, and any transaction conducted via any medium whatsoever, including, but not limited to, paper, facsimile, Internet, or telephone."

30. The PLPA, at 815 ILCS 123/15-5-5, imposes a 36% annual percentage rate cap.

31. Under 815 ILCS 123/15-5-10, "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan."

32. 815 ILCS 123/15-5-15, "no evasion," provides:

> (a) No person or entity may engage in any device, subterfuge, or pretense to evade the requirements of this Act, including, but not limited to, making loans disguised as a personal property sale and leaseback transaction; disguising loan proceeds as a cash rebate for the pretextual installment sale of goods or services; or making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State.
>
> (b) If a loan exceeds the rate permitted by Section 15-5-5, a person or entity is a lender subject to the requirements of this Act notwithstanding the fact that the person or entity purports to act as an agent, service provider, or in another capacity for another entity that is exempt from this Act, if, among other things:
>
>   (1) the person or entity holds, acquires, or maintains, directly or indirectly, the predominant economic interest in the loan; or
>
>   (2) the person or entity markets, brokers, arranges, or facilitates the loan and holds the right, requirement, or first right of refusal to purchase loans, receivables, or interests in the loans; or

(3) the totality of the circumstances indicate that the person or entity is the lender and the transaction is structured to evade the requirements of this Act. Circumstances that weigh in favor of a person or entity being a lender include, without limitation, where the person or entity:

    (i) indemnifies, insures, or protects an exempt person or entity for any costs or risks related to the loan;

    (ii) predominantly designs, controls, or operates the loan program; or

    (iii) purports to act as an agent, service provider, or in another capacity for an exempt entity while acting directly as a lender in other states.

33. Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

34. Waiver of the PLPA is expressly forbidden. 815 ILCS 123/15-10-25 provides that "There shall be no waiver of any provision of this Act."

## HOW OPPORTUNITY FINANCIAL, LLC ARRANGES LOANS

35. According to the annual report on SEC Form 10-K filed by OppFi, Inc., the public parent of Opportunity Financial, LLC, for the year ending Dec. 31, 2022 (original pages 10-11), Opportunity Financial, LLC uses a "Bank Partner Model," described as follows:

> OppFi employs two models, bank partner and direct. In the bank partner model, the bank uses the OppFi technology platform to provide its loan products to consumers where OppFi facilitates the process and the loan products are funded directly by the bank. In the direct origination model, applicants who apply and obtain a loan through OppFi's online platform are underwritten, approved, and funded directly by OppFi.
>
> The bank lending product leverages OppFi's marketing and servicing expertise and the banks' broad national presence to facilitate credit access in 35 states or approximately 70% of the U.S. population. This relationship operates much akin to the "Managing General Agent" relationship with an insurance carrier. Additionally, this model has been tested in the credit card and mortgage industries and is a key growth enabler for the business. Similar to the Managing General Agent insurance relationship, OppFi manages many aspects of the loan life cycle on behalf of its bank partners, including customer acquisition, underwriting and loan servicing. This relationship allows OppFi's bank partners to leverage OppFi's digital acquisition, machine learning underwriting and highly-rated customer service capabilities, which they would otherwise need to develop in-house. OppFi's bank partners use their own capital to originate loans. OppFi's bank partners are FinWise Bank ("Finwise"), First Electronic Bank ("FEB"), and Capital Community Bank ("CCB").
>
> In the year ended December 31, 2022, approximately 95% of OppFi's net originations were generated from loans originated by its bank partners and facilitated by the OppFi platform.

> Finwise, FEB and CCB began originating loans on the OppFi platform in January 2018, May 2020 and October 2020, respectively.
>
> OppFi has entered into separate agreements with each of its three bank partners. OppFi's agreements with its bank partners are nonexclusive, generally have 60-month terms and certain agreements automatically renew, subject to certain early termination provisions and minimum fee amounts, and do not include any minimum origination obligations or origination limits. OppFi's bank partners generally retain approval rights on all aspects of the program and are primarily responsible for regulatory and compliance oversight.
>
> Under the bank partner model, OppFi is compensated by the bank partner as a service provider for OppFi's role in delivering the technology and services to the bank partner to facilitate origination and servicing of loans throughout each loan's lifecycle. Customers who meet the underwriting criteria for multiple bank partners are referred to a specific bank partner randomly based on a computer algorithm and volume targets set with each bank partner. OppFi's bank partners generally hold loans originated on our platform for typically two to three days following origination. OppFi acquires participation rights in such loans ranging from 95% to 100% of the loan. OppFi and its bank partners each pay or reimburse each other for certain fees and costs that are immaterial in amount.
>
> The economic difference to OppFi in loans originated via the bank partnership model as compared to the direct origination model are immaterial and generally result from a minimal program fee paid to OppFi for each origination as well as increased compliance costs for OppFi, which collectively have an insignificant impact on OppFi's customer lifetime value. OppFi has shifted towards the bank partner model as the percentage of Total Net Originations by OppFi's bank partners has increased from 91% for the year ended December 31, 2021 to 95% for the year ended December 31, 2022. OppFi has shifted to the bank partner model because its bank partners operate under federal law, which allows them to lend nationally based on their state domicile and facilitates a national product offering for the consumer while also streamlining regulatory requirements and compliance infrastructure.

36. The percentage of loans originated using the "bank partner model" subsequently increased to 98%.

37. The original agreement between Opportunity Financial, LLC and Capital Community Bank, the "bank partner" involved in the loan to Plaintiff, is in <u>Exhibit B.</u> An amendment is in <u>Exhibit C.</u> Arrangements with other "bank partners" are similar.

38. Opportunity Financial, LLC thus obtains the predominant economic interest in the loan, i.e., 95% to 100%.

39. Opportunity Financial, LLC markets, brokers, arranges, and facilitates the loan and has the right to obtain the 95% to 100% interest in the loans.

40. Opportunity Financial, LLC predominantly designs, controls, or operates the loan program, i.e., "deliver[s] the technology and services to the bank partner to facilitate origination and

servicing of loans throughout each loan's lifecycle".

41. Opportunity Financial, LLC engaged in "direct origination" of some loans, but "shifted towards the bank partner model" in order to avoid state interest caps, i.e., "because its bank partners operate under federal law, which allows them to lend nationally based on their state domicile." It thus "purports to act as an agent, service provider, or in another capacity for an exempt entity while acting directly as a lender in other states."

42. Opportunity Financial, LLC pays Capital Community Bank a small, guaranteed fee for each loan originated. Capital Community Bank stands to lose virtually nothing if a loan goes bad and stands to gain practically nothing if a loan is repaid.

43. Capital Community Bank has a website that offers its customers personal loans, https://ccbank.com/personal-loans, but it does not mention the high-interest loans at issue here. These can only be obtained through Opportunity Financial, LLC, and not through Capital Community Bank.

## EXTENT OF LENDING ACTIVITIES AT ISSUE

44. Opportunity Financial, LLC had $457 million in receivables outstanding at the end of 2022. On information and belief, more than 5% (at least $20 million) were owed by Illinois residents.

45. The financial statements of Capital Community Bank disclose net operating income of less than $7 million, including not only income from the loans at issue but its own banking operations.

46. In an attempt to evade the PLPA, Opportunity Financial, LLC's agreements provide for arbitration and require the arbitrator to apply Utah law, which does not limit interest rates.

47. Such provision is an impermissible prospective waiver of statutory rights under the PLPA and otherwise, and is invalid.

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

48. Plaintiff incorporates paragraphs 1-47.

-8-

49. This claim is against all Defendants.

50. There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff must repay outstanding loans.

51. Declaratory relief will resolve such controversy.

52. An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

53. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

54. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was arranged by Opportunity Financial, LLC at more than 36% interest.

55. Plaintiff may alter the class definition to conform to developments in the case and discovery.

56. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 1,000 class members.

57. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

58. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

59. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

60. Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

61. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Injunctive relief;

    ii. Declaratory relief;

    iii. Restitution of all amounts collected on the loans from members of the class;

    iv. Costs of suit; and

    v. Such other and further relief as the Court deems proper.

## COUNT II – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

62. Plaintiff incorporates paragraphs 1-47.

63. This claim is against all Defendants.

64. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

65. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*.

## CLASS ALLEGATIONS

66. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

67. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was arranged by Opportunity Financial, LLC at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

68. Plaintiff may alter the class definition to conform to developments in the case and discovery.

69. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

70. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

71. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

72. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

73. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i. Compensatory damages;

      ii. Punitive damages;

      iii. Attorney's fees, litigation expenses and costs of suit; and

      iv. Such other and further relief as the Court deems proper.

## COUNT III – RICO

74. Plaintiff incorporates paragraphs 1-47.

75. This claim is against Defendants Pamela D. Johnson and Todd G. Schwartz, who are the RICO "persons." 18 U.S.C. § 1964(3).

76. Defendants Pamela D. Johnson and Todd G. Schwartz violated § 1962(c) of RICO by participating directly or indirectly in the conduct of the enterprise's illegal operations, through the

"collection of unlawful debt." 18 U.S.C. § 1962(c).

77. RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

78. The means and methods by which Pamela D. Johnson and Todd G. Schwartz conducted and participated in the conduct of the affairs of the enterprise was and continues to be the operation, direction, and control of the loan company in the business of lending money at usurious rates under the laws of numerous states, including Illinois, where the usurious rates charged were at least twice the enforceable rate (36%). Pamela D. Johnson and Todd G. Schwartz were directly and materially involved in this intentional misconduct. They knew the subject loans were illegal under Illinois law, but they actively participated in the conduct of the illegal lending enterprise anyway.

79. According to the annual report on SEC Form 10-K filed by OppFi, Inc., the public parent of Opportunity Financial, LLC, for the year ending Dec. 31, 2022 (original page 36), "lending programs that involve originations by a bank in reliance on origination-related services being provided by non-bank lending platforms and/or program managers are subject to potential litigation and government enforcement claims based on 'rent-a-charter' or 'true lender' theories, particularly where such programs involve the subsequent sale of such loans or interests therein to the platform." The report was signed by Pamela D. Johnson and Todd G. Schwartz.

80. The Illinois Predatory Loan Prevention Act specifically imposes liability on parties such as Opportunity Financial, LLC that arrange for the making of usurious loans to Illinois residents and purchase such loans.

81. Opportunity Financial, LLC is an "enterprise" engaged in, and whose activities affect, interstate commerce, in that it makes loans via the Internet.

82. Defendants Pamela D. Johnson and Todd G. Schwartz are associated with this enterprise, in that they direct the making and collection of loans by Opportunity Financial, LLC.

83. The enterprise has an ongoing organization with an ascertainable structure, and it functions as a continuing unit with separate roles and responsibilities

84. The lending enterprise operates through ACH transactions, such as those involving the payments by Plaintiff. These ACH transactions involve interstate commerce.

85. The lending enterprise operates through a website, https://www.oppfi.com/. The website furthers the illegal financial transactions. The website allows individuals to enter information to execute ACH wire transfers to the individual borrower and to debit the person's account in the purported repayment of the illegal debt. The website involves transactions in interstate commerce.

86. As alleged above, Pamela D. Johnson and Todd G. Schwartz violated §1962(c) of RICO by participating directly or indirectly in the conduct of the enterprise's illegal operations, through the "collection of unlawful debt." 18 U.S.C. §1962(c).

87. In operating and conducting the affairs of the enterprise, Pamela D. Johnson and Todd G. Schwartz used proceeds from the collection of unlawful debt to further the operations and objectives of the enterprise.

88. The racketeering activity at issue is related and continuous. The hundreds of thousands of ACH transactions served and continue to serve the central scheme to make illegal loans at extortionate interest rates. The hundreds of thousands of ACH transactions served the common scheme of evading state law.

89. The scheme began no later than 2018 and continues to date, and will occur repeatedly in the future to the detriment of Illinois consumers.

90. Plaintiff was deprived of money as a result of the violations of 18 U.S.C. § 1962(c) by, among other things, the payment of unlawful debt to the enterprise.

## CLASS ALLEGATIONS

91. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

92. The class consists of: (a) all persons with Illinois addresses, (b) for whom a loan was arranged by Opportunity Financial, LLC, (c) which loan was made on or after a date four years prior to the filing of suit.

93. Plaintiff may alter the above class definition to conform to developments in the case and discovery.

94. There are more than 100 class members. The class is so numerous that joinder of their members is not practicable.

95. There are questions of law and fact common to members of the class, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

   a. Whether the loans at issue are "unlawful debts" as defined in RICO.

   b. Whether Opportunity Financial, LLC is an "enterprise."

   c. Whether Defendants Pamela D. Johnson and Todd G. Schwartz are associated with Opportunity Financial, LLC.

   d. Whether Defendants Pamela D. Johnson and Todd G. Schwartz conducted or participated in the affairs of Opportunity Financial, LLC through a pattern of making and collecting unlawful loans.

96. Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

97. Plaintiff's claims are typical of the claims of the members of the class. All are based on the same factual and legal theories.

98. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.  Treble damages;

    ii.  Attorney's fees, litigation expenses and costs of suit; and

    iii.  Such other or further relief as the Court deems proper.

          */s/ Daniel A. Edelman*
          Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Keelan D. Kane
**EDELMAN, COMBS, LATTURNER**
  **& GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com


T:\40851\Pleading\New Draft Complaint with TLG Additionsl_Pleading.WPD

## JURY DEMAND

  Plaintiff demands trial by jury.

          */s/ Daniel A. Edelman*
          Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

    Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**DOCUMENT PRESERVATION DEMAND**

   Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

            */s/ Daniel A. Edelman*
            Daniel A. Edelman