UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COREY FRATUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-6489 |
| v. | ) | |
| | ) | Judge April M. Perry |
| OPPORTUNITY FINANCIAL, LLC, | ) | |
| TODD G. SCHWARTZ, and | ) | |
| PAMELA D. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

In many U.S. states, usury laws cap the interest rate lenders can charge on consumer loans. One of those states is Illinois, which in 2021 enacted the Predatory Loan Prevention Act ("PLPA"). The PLPA caps the interest rate on consumer loans at thirty-six percent, and applies to "any person or entity that offers or makes a loan to a consumer in Illinois." 815 ILCS 123/15-1-15(a). Wary or wise that lenders might attempt to contract around the PLPA, Illinois made the PLPA's protections unwaivable, 815 ILCS 123/15-10-25, and also outlawed the use of any "device, subterfuge, or pretense to evade the requirements of this Act." 815 ILCS 123/15-5-15(a).

Plaintiff in this case is Corey Fratus, an Illinois resident. Plaintiff alleges that in March 2024, he obtained online a consumer loan with an interest rate of 159.56 percent from Defendant Opportunity Financial, LLC ("OppFi"). After learning the interest rate on his loan exceeded the lawful limit in Illinois, Plaintiff contacted OppFi to have his rate adjusted down, which OppFi refused on the grounds that the promissory note signed by Plaintiff stated that the loan was

subject to Utah law, not Illinois law. So Plaintiff sued OppFi and two of its executive officers, Todd G. Schwartz and Pamela D. Johnson (together with OppFi, "Defendants"), seeking declaratory, injunctive, and monetary relief under state and federal law.

In addition to stating that Utah law would govern the promissory note, the note also contained a binding arbitration clause. Defendants now move to compel arbitration.[1] Plaintiff argues that the clause is unenforceable because the promissory note's Utah governing law provision would deprive him of the right to assert his unwaivable PLPA rights. Having considered the parties' arguments, Defendants' motion to compel arbitration is granted for the reasons set forth below.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A dispute must be sent to arbitration if (1) the parties formed a valid, written agreement to arbitrate; (2) the dispute falls within the scope of that agreement, and (3) a party refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d

---

[1] Defendants argued that Schwartz and Johnson may enforce the arbitration agreement despite not being signatories to the promissory note. Doc. 16 at 13–15. Plaintiff did not respond to this argument, and so the Court will presume for purposes of this motion that Schwartz and Johnson are entitled to invoke the arbitration agreement. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver").

Even if the argument were not waived, and Schwartz and Johnson not entitled to invoke the arbitration agreement, the Court would still grant a stay of litigation as to the non-signatory Defendants. When a case involves both arbitrable and non-arbitrable issues, the Court must decide whether to stay the non-arbitrable claims pending arbitration or to allow them to proceed in parallel. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). To make this determination, the Court considers factors including the risk of inconsistent rulings. *See Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007). Here, each of Plaintiff's claims are brought against all three Defendants and premised on the same law and facts, and so a stay of any litigation by Plaintiff against Schwartz and Johnson would be appropriate to prevent potentially inconsistent rulings. *Id.*

682, 687 (7th Cir. 2005). If the enforceability of an agreement to arbitrate is challenged, the party opposing arbitration bears the burden of demonstrating that the arbitration agreement is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Once it is determined that parties formed an agreement to arbitrate, it is presumed that the courts may resolve challenges aimed at the validity, enforceability, and scope of that agreement. *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986). No presumptions need apply here, though, because the arbitration agreement itself provides that claims "related to the validity, enforceability, coverage or scope of this [arbitration] Clause … shall be determined by a court." Doc. 1-1 at 6.

## ANALYSIS

Plaintiff does not dispute the existence of an agreement to arbitrate or that his substantive claims fall within its scope. Instead, he invokes the doctrine of prospective waiver to argue that the arbitration agreement is unenforceable. Specifically, Plaintiff argues that the arbitration agreement compels the arbitrator to apply Utah law, thus depriving Plaintiff of any opportunity to invoke his unwaivable rights under PLPA. For the same reason, Plaintiff also contends the arbitration agreement is unconscionable. Defendants argue that this misreads the contract, and that in any event, Plaintiff's arguments should be heard by the arbitrator, not the Court, because his concerns regarding the governing law provision relate to the entire contract, rather than the arbitration agreement specifically. Finally, Defendants propose that the governing law provision may be severed, should the Court find that it renders the arbitration agreement unenforceable.

The Court starts with the threshold question of whether it may consider Plaintiff's prospective waiver argument, or instead whether the FAA requires that the arbitrator hear Plaintiff's challenge in the first instance. Defendants urge the latter, citing *Buckeye Check*

3

*Cashing, Inc. v. Cardegna* for the principle that "an arbitration provision is severable from the remainder of the contract" and so "unless the challenge is to the arbitration clause itself, the issue of the [overarching] contract's validity is considered by the arbitrator in the first instance." 546 U.S. 440, 445–46 (2006); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (on motion to compel arbitration, court may only consider enforceability and validity challenges aimed at "the arbitration clause itself," not "the contract generally"). Ultimately, the Court does not agree that Plaintiff's challenge falls within *Buckeye's* proscription. Plaintiff's argument is that the arbitration clause cannot be enforced because the promissory note's governing law provision requires the arbitrator to apply Utah law and thus prevents him from asserting his rights under Illinois law. This argument is directed to the arbitration clause because it concerns a perceived defect in the nature of the arbitral proceedings laid out by agreement. Thus, the prospective waiver argument may be heard by this Court.

The next question becomes whether the parties' arbitration agreement violates the prospective waiver doctrine. Under this doctrine, an arbitration agreement is unenforceable if the rules and procedures of the arbitral forum prevent a party from vindicating its statutory remedies. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985).[2] For example, a "provision in an arbitration agreement forbidding the assertion of certain statutory rights" would run afoul of the doctrine. *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013). Another example would be a choice-of-law provision that requires an arbitrator to

---

[2] The question of whether the prospective waiver doctrine even applies to substantive rights arising from state law is currently pending before the Seventh Circuit. *See Harris v. W6LS, Inc.*, No. 24-2056 (7th Cir. argued Feb. 12, 2025). But whatever the Seventh Circuit decides, it will not affect the ultimate disposition in this case because the Court concludes that the arbitration agreement here does not prospectively waive any substantive rights, state or federal.

4

resolve disputes under the laws of a jurisdiction that foreclose any opportunity for the party resisting arbitration to vindicate his statutory rights. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 539 (1995), citing *Mitsubishi Motors*, 473 U.S. at 637 n. 19.

In recent years, courts in this district and elsewhere have applied the prospective waiver doctrine to invalidate agreements requiring parties to arbitrate their disputes under tribal law, on the ground that this requirement prevented the "effective vindication of federal statutory protections and remedies." *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332, 344 (4th Cir. 2020); *see also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 240–41 (3d Cir. 2020) (arbitration agreement effected "an impermissible prospective waiver of statutory rights" where it mandated tribal law apply, not federal); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127 (2d Cir. 2019) (requirement that arbitrator apply only tribal law, not state or federal, rendered arbitration agreement unenforceable); *Fahy v. Minto Dev. Corp.*, 722 F.Supp.3d 784, 802 (N.D. Ill. 2024) (same); *Harris v. FSST Mgmt. Servs., LLC*, 686 F.Supp.3d 734, 742 (N.D. Ill. 2023) (same). In every one of these cases, courts interpreted specific provisions of the arbitration agreements and broader contracts in which they appeared as mandating that the arbitrator apply tribal law, to the exclusion of federal or state law.

Plaintiff urges this Court to invalidate his arbitration agreement along similar lines because, as he reads it, the promissory note's governing law provision—which he contends the arbitrator must follow—operates to deprive him of his Illinois state law remedies. However, the Court does not read the arbitration agreement so broadly.

In relevant part, the promissory note's governing law provision states that the "Note is governed by federal law and the laws of the State of Utah, except that the Arbitration Clause is governed by the Federal Arbitration Act." Doc. 1-1 at 5. Later, the arbitration clause itself

5

provides that "[t]he Arbiter must apply substantive law consistent with the FAA." *Id*. at 6. Reading these provisions in harmony, *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (contracts should be interpreting to harmonize all provisions), the Court concludes that the latter provision (and not the former) controls what law the arbitrator is required to apply.

The question then becomes what substantive law would be applied "consistent with the FAA." Doc. 1-1 at 6. Plaintiff seems to consider it a foregone conclusion that the arbitrator would apply Utah law to Plaintiff's detriment. But the Court does not agree that this is the only possible result. "The selection of one state's substantive law over another in the event of a conflict presents a question of law." *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 736–37 (7th Cir. 2008). Different jurisdictions apply different analytical frameworks to resolve choice-of-law questions, and Plaintiff and Defendant debate whether Utah or Illinois principles would apply. *See* Doc. 16 at 17 n. 4. (suggesting Utah law); Doc. 23 at 13 (suggesting Illinois law). Given that the promissory note's governing law section states that federal law applies in addition to Utah law, this provides a third possibility. In any event, Illinois, Utah, and federal courts all apply the conflict-of-law principles outlined in the Restatement (Second) of Conflict of Laws. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002). And under the Restatement approach, choice-of-law clauses in contracts are not automatically enforced. *See, e.g.*, *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) ("Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy."). Like other contractual provisions, choice-of-law clauses may be challenged or invalidated where enforcing them would be in contravention of the state's express public policy. *See, e.g.*, *Wright-*

6

*Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990) (refusing to enforce contractual choice-of-law provision); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. g (1971) (discussing protection of state's fundamental policy as basis not to enforce contractual choice-of-law clause and noting that "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect against the oppressive use of superior bargaining power"). Plaintiff offers no interpretation of the arbitration clause that would preclude the arbitrator from conducting a choice of law analysis and thereafter refusing to enforce the provision of the promissory note calling for Utah law to be applied.

To be sure, the Court does not know what choice-of-law determination the arbitrator will make. But it is well-settled that this type of question should be resolved by the arbitrator in the first instance. *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21 (2012); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995) (choice-of-law "must be decided in the first instance by the arbitrator"), citing *Mitsubishi Motors*, 437 U.S. at 637, n. 19. Where no conclusions can be drawn from the agreement's language or otherwise regarding "what law the arbitrators will apply to [Plaintiff's] claims or [whether he] will receive diminished protection as a result," sending the question to the arbitrator is proper. *Vimar Seguros*, 515 U.S. at 540.

The key problem with Plaintiff's argument is the assumption that if an unwaivable substantive statutory right is ostensibly waived in a contract, that right cannot be enforced in arbitration. But "[a]n arbitration agreement … does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). Certainly, Plaintiff raises meaningful concerns regarding how the promissory note's governing law provision might interact with the PLPA. But Plaintiff falls short

7

of persuading this Court that the arbitral forum is less equipped than a court to consider these issues or that the parties have placed any limits on how the arbitrator does so. Indeed, were the merits of Plaintiff's claims before it, this Court would need to undergo the same choice-of-law analysis as the arbitrator.

What does Plaintiff fear then, really? Perhaps simply that the arbitrator may get it "wrong" and uphold the legality of Plaintiff's allegedly usurious loan agreement, thus effectuating a waiver of his unwaivable PLPA rights. But the Court finds that this concern is unavailing in light of *Vimar Seguros*. In that case, the Supreme Court permitted a dispute to go to foreign arbitration—despite uncertainty about whether the arbitrator would enforce protections guaranteed by U.S. law—based in part on the availability of a "subsequent opportunity for [judicial] review" of the foreign arbitral award "to ensure that the legitimate interest in the enforcement of the … laws has been addressed." *Vimar Seguros*, 515 U.S. at 540, citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 482(2)(d) (1986). *Vimar Seguros* is distinguishable from this case in that awards issued by foreign powers are not guaranteed recognition by default and U.S. courts may choose not to recognize them on various grounds. *See Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 696–97 (7th Cir. 2009). In contrast, the FAA tightly constrains the permissible grounds for federal courts to vacate arbitral awards to a delineated list, which focuses more on "procedural protections rather than ensuring the correct outcome." *Zimmer Biomet Holdings, Inc., v. Insall*, 108 F.4th 512, 516 (7th Cir. 2024), citing 9 U.S.C. § 10(a). Nonetheless, meaningful judicial review remains possible, as courts may refuse to enforce an arbitral award that "violates positive law" or offends "explicit" and "well defined" public policy ascertainable "by reference to the laws and legal precedents." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist.* 17, 531 U.S. 57,

8

62–63 (2000); *see also Zimmer*, 108 F.4th at 516–17. That issue is not yet before the Court (and might never be), but suffice to say, if Plaintiff is correct that PLPA's protections cannot be waived, there would be an opportunity to challenge the validity of an arbitral award as having effectuated an unlawful waiver of those rights.

Finally, the Court addresses briefly the parties' dispute regarding whether the governing law provision could be severed. Defendants argue it can, while Plaintiff contends that because loan agreements in violation of the PLPA are "null and void," 815 ILCS 123/15-5-10, offending provisions cannot be severed to salvage either the agreement as a whole or a related agreement to arbitrate. As explained above, the Court's inquiry here is limited to the enforceability of the agreement to arbitrate, which is severable from the rest of the promissory note. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006). Such agreements to arbitrate may be enforced even when appearing in a "contract that the arbitrator later finds to be void." *Id*. at 448. Thus, having already rejected Plaintiff's prospective waiver argument for invalidating the arbitration clause, the Court refrains from answering the questions of whether the governing law provision renders the promissory note unenforceable or, if so, whether PLPA forbids the severing of clauses to salvage an otherwise unlawful loan agreement. These disputes go beyond the enforceability of the agreement to arbitrate, and should be heard by the arbitrator in the first instance.

## CONCLUSION

For the foregoing reasons, the Court finds that nothing in the arbitration agreement forecloses Plaintiff from vindicating his substantive rights under the PLPA in arbitration. Accordingly, it rejects Plaintiff' argument that the arbitration agreement is unenforceable under the prospective waiver doctrine. Similarly, the Court rejects Plaintiff's argument that the

arbitration agreement is unconscionable, as this argument is simply the prospective waiver argument packaged in a different box. Defendants' motion to compel arbitration is granted, and the litigation stayed as to all Defendants.

Dated: August 22, 2025

APRIL M. PERRY
United States District Judge